[No. 6382. Decided January 15, 1907.]

THE STATE OF WASHINGTON, *On the Relation of The American Freehold-Land Mortgage Company of London, Limited, Appellant,* v. THOMAS J. TANNER *et al., Respondents.*[1]

APPEAL—OBJECTIONS TO RULINGS. OR MOTIONS—WAIVER. A motion to separately state affirmative defenses in an answer will, on appeal, be deemed to have been waived where the plaintiff demurred and replied to the answer and the record fails to show any action by the court upon the motion.

LIMITATION OF ACTIONS — EQUITABLE DEFENSES — COLLUSION — JUDGMENT—LACHES. An equitable defense to a judgment in that it was procured by collusion and fraud is not barred by the statute of limitations or by laches, as long as a right of action on the judgment survives, but may be made whenever the judgment is sought to be enforced.

MUNICIPAL CORPORATIONS—WARRANTS IN SATISFACTION OF VOID JUDGMENT. Warrants issued in partial satisfaction of a judgment against a city cannot be enforced if the judgment was void.

[1]Reported in 88 Pac. 321.

MUNICIPAL CORPORATIONS—DEBT—SPECIAL ASSESSMENTS. A lia-
bility on street grade contracts to be paid by special assessments on
the property benefited is not a general charge against the city on
failure to collect the special assessments.

COURTS—JUDGMENT—VESTED RIGHTS—EFFECT OF DECISION. No
vested rights can be claimed by holders of warrants payable out of
special assessments, who secured judgment against the city thereon
by agreement with city officials on the strength of a decision of the
supreme court declaring the city generally liable on similar war-
rants, where, prior to the agreement for judgment, the decision was
disapproved and expressly limited to that controversy as the law of
the case.

MUNICIPAL CORPORATIONS—PUBLIC IMPROVEMENTS—GENERAL LIA-
BILITY—COLLUSIVE JUDGMENT. An agreement with a city council, on
failure to collect special assessments, whereby a general judgment
is rendered against the city to discharge obligations on the street
grade contracts, which were not general charges against the city,
is fraudulent as to the city and its taxpayers, and the judgment is
void.

Appeal from a judgment of the superior court for Jeffer-
son county, Hatch, J., entered March 13, 1906, upon the
pleadings in favor of the defendants, dismissing an applica-
tion for mandamus to compel the city and its officers to levy a
tax for the payment of warrants. Affirmed.

*R. P. Oldham*, for appellant. The answer was a collateral
attack on the street grade judgments. 1 Black, Judgments
(2d ed.), §§ 252, 253a; *Mayor v. Lord*, 9 Wall. 409, 19
L. Ed. 704; *Howard v. Huron*, 5 S. D. 539, 59 N. W. 833,
26 L. R. A. 493; *State ex rel. Abernethy v. Moss*, 13 Wash.
42, 42 Pac. 622, 43 Pac. 373; *Frost v. McLeod*, 19 La. Ann.
69; *Pearse v. Hill*, 163 Mass. 493, 40 N. E. 765; *Lee v. Wat-
kins*, 13 How. Prac. 178; *Morley Bros. v. Stringer*, 133
Mich. 690, 95 N. W. 978; *Clark Co. v. Colton*, 91 Md. 195,
46 Atl. 386, 49 L. R. A. 698. It was therefore necessary for
it to appear that the court had no jurisdiction. *Harshman
v. Knox County*, 122 U. S. 306, 7 Sup. Ct. 1171, 30 L. Ed.
1152; *Nordlinger v. Huff*, 31 Wash. 360, 79 Pac. 73. The
court having jurisdiction, the judgments were conclusive and

binding on the city. *Sayward v. Thayer*, 9 Wash. 22, 36 Pac. 966, 38 Pac. 137; *Isensee v. Austin*, 15 Wash. 352, 46 Pac. 394; *Boston Nat. Bank v. Hammond*, 21 Wash. 158, 57 Pac. 365; *Krutz v. Batts*, 18 Wash. 460, 51 Pac. 1054; *Board of Commissioners v. Platt*, 79 Fed. 567; 1 Black, Judgments (2d ed.), § 245. The court had jurisdiction over the subject-matter. *Baker v. Seattle*, 2 Wash. 576, 27 Pac. 462; *Bank of British Columbia v. Port Townsend*, 16 Wash. 450, 47 Pac. 896; *Potter v. Whatcom*, 25 Wash. 207, 65 Pac. 197; *Foltz v. St. Louis etc. R. Co.*, 8 C. C. A. 635, 60 Fed. 316; *Board of Commissioners v. Platt; supra; Portland Lumbering & Mfg. Co. v. East Portland*, 18 Ore. 21, 22 Pac. 536, 6 L. R. A. 290; *Soule v. Seattle*, 6 Wash. 315, 33 Pac. 384, 1080; 1 Black, Judgments (2d ed.), § 216. It makes no difference that the judgment was entered by consent of the council knowing that the city had a valid defense. *Mayor of Helena v. United States*, 104 Fed. 113. A party or privy cannot attack a judgment in a collateral proceeding on account of fraud or collusion. 1 Black, Judgments (2d ed.), §§ 290, 253a, and authorities cited; *Christmas v. Russell*, 5 Wall. 290, 18 L. Ed. 475; *Hiapp v. Thomas*, 39 Ohio 377, 48 Am. Rep. 462; *Howard v. Huron, supra; Smith v. Ormsby*, 20 Wash. 396, 55 Pac. 570, 72 Am. St. 110; *Peyton v. Peyton*, 28 Wash. 278, 68 Pac. 757; *Harshman v. Knox County, supra.*

*A. W. Buddress*, for respondents, *inter alia*, cited the following as mandamus cases where equitable defenses to judgments were sustained as direct and not collateral attacks on the judgments. *Kane & Co. v. Independent School-District*, 82 Iowa 5, 47 N. W. 1076; *Smith v. Broderick*, 107 Cal. 644, 40 Pac. 1033, 48 Am. St. 167; *Union Bank of Richmond v. Commissioners*, 119 N. C. 214, 25 S. E. 966, 34 L. R. A. 487; *Morehead Banking Co. v. Burlington*, 124 N. C. 251, 32 S. E. 558; *Board of Commissioners v. Union Bank of Richmond*, 96 Fed. 293; *Ft. Jefferson Imp. Co. v. Green*,

112 Ky. 85, 65 S. W. 161; *Lawrence Mfg. Co. v. Janesville Cotton Mills*, 138 U. S. 552, 11 Sup. Ct. 402, 34 L. Ed. 1005; *Texas & Pac. R. Co. v. Southern Pac. Co.*, 137 U. S. 48, 11 Sup. Ct. 10, 34 L. Ed. 614; *Kelley v. Milan*, 127 U. S. 139, 8 Sup. Ct. 1101, 32 L. Ed. 77; *Ward v. Joslin*, 186 U. S. 142, 22 Sup. Ct. 807, 46 L. Ed. 1093; *Lowber v. Mayor of New York*, 26 Barb. 262; *Wilder v. Board of Commissioners*, 41 Fed. 512. The record affirmatively showing that the judgments were rendered on claims for which the city was not legally liable, they could be attacked collaterally. *Hall v. Melvin*, 62 Ark. 439, 35 S. W. 1109, 54 Am. St. 301; *State ex rel. Summerfield v. Tyler*, 14 Wash. 494, 45 Pac. 31, 53 Am. St. 878, 37 L. R. A. 207; *State ex rel. Langhorne v. Superior Court*, 32 Wash. 80, 72 Pac. 1027; *Charleston v. Beller*, 45 W. Va. 44, 30 S. E. 152; *Noyes v. State*, 46 Wis. 250, 1 N. W. 1, 32 Am. Rep. 710; *Hastings v. Whitmer*, 2 Ind. Ter. 335, 51 S. W. 967; *Commissioners v. Loague*, 129 U. S. 493, 9 Sup. Ct. 327, 32 L. Ed. 780; *Ritchie v. Sayers*, 100 Fed. 520; *Springer v. Shavender*, 116 N. C. 12, 21 S. E. 397, 47 Am. St. 791, 33 L. R. A. 772; *Ewing v. Mallioon*, 65 Kan. 484, 70 Pac. 369, 93 Am. St. 299; *Paul v. Willis*, 69 Tex. 261, 7 S. W. 357; *Scott v. McNeal*, 154 U. S. 34, 14 Sup. Ct. 1108, 38 L. Ed. 896; *Ex Parte Lange*, 18 Wall. 163, 21 L. Ed. 872; *Howard v. Huron*, 6 S. D. 180, 60 N. W. 803.

HADLEY, C. J.—This is an action in mandamus by which it is sought to compel the mayor and city council of the city of Port Townsend to levy annually a tax to the full amount allowed by statute, for the payment of warrants owned by the relator and drawn upon the indebtedness fund of said city. The cause was once before appealed to this court, and the appeal was determined upon demurrer to the alternative writ of mandate. It was held here that the demurrer should have been sustained, but upon reversal the trial court was directed to grant leave to amend the affidavit for the writ so as to state

additional facts. *State ex rel. American Freehold-Land Mtg. Co. v. Mutty*, 39 Wash. 624, 82 Pac. 118. The affidavit was accordingly amended and an amended alternative writ was issued. The primary question presented by this appeal is whether the relator's warrants are void, and upon the determination of that question depends the further one of the right to an increased levy.

The amended alternative writ recites, that during the months of May, September, and November, 1898, the warrants in question were, by order of the city council, drawn upon the indebtedness fund of said city; that each of the warrants was issued in part satisfaction of judgments which were rendered in the superior court of Jefferson county; that, by indorsement of the payee and for a valuable consideration, the relator is the present owner and holder of the warrants. It is further alleged that there are outstanding warrants drawn upon the indebtedness fund, amounting to about $116,000, exclusive of interest; that the annual interest upon said amount is about $7,000, and the accrued interest is now about $52,000, making a total of outstanding and unpaid indebtedness against the indebtedness fund of about $168,000, Allegations are made concerning the available assets of the indebtedness fund, followed by the statement that the same are insufficient in amount to even be equal to the annual interest upon the warrants, by reason whereof the indebtedness against the fund is increasing instead of diminishing. It is further alleged that, of the indebtedness outstanding against said fund, there are warrants amounting to about $105,000, together with accrued interest thereon, which were issued prior to those owned by the relator, and which will have to be paid from the fund before any of relator's warrants are paid; that unless the city exercises its full taxing power in behalf of said fund, the relator's warrants will never be paid. A writ is asked to compel the levy of an additional tax of five mills for the indebtedness fund for the years 1904 and 1905,

respectively, and of six mills for each successive year until the relator's warrants are paid in full.

The defendants answered, showing the nature of the actions in which the several judgments were rendered, in partial satisfaction of which these warrants were issued. It is shown that the indebtedness in its inception arose out of contracts for the grading of streets in Port Townsend, which was all to be paid from special assessment funds, that warrants were drawn to be paid from such special funds, but that no sufficient funds were provided therefor, and that the warrants were not paid; that by reason of the failure of the city to provide and collect such special funds, suits were instituted in the year 1898 by the holders of street grade warrants to obtain general judgments against the city; that the city failed to appear or answer in said suits, and judgments by default were rendered; that in 1898 before the commencement of any of said actions upon the street grade warrants, there were outstanding and unpaid street grade warrants of the same nature and effect, amounting in all to about $130,000; but that prior to the commencement of said actions the city council entered into an agreement with all of the several holders of street grade warrants, including the plaintiffs in the actions, by the terms of which the council agreed that, if the holders of street grade warrants should commence actions against the city to recover general judgments for the respective amounts of their warrants, the city would not appear in any such actions, but would permit each plaintiff to obtain a general judgment against the city by default, and that the city council would thereupon direct all such judgments to be satisfied by the issuance of warrants upon the city's indebtedness fund, to draw interest at the rate of six per cent per annum until paid; that in pursuance of said agreement, actions were commenced, the city failed to appear, judgments by default were taken, and warrants were issued upon the indebtedness fund in satisfaction of such judgment, amounting in all to the total princi-

23—45 WASH.

pal of about $100,000, of which the warrants in question were a part; that on the 1st day of January, 1899, after the issuance of said $100,000 of indebtedness fund warrants, and while there were still outstanding and unpaid a balance of about $30,000 of street grade warrants which had not been reduced to judgments by the holders thereof, the city council refused to recognize any of said indebtedness fund warrants issued in pursuance of the agreement aforesaid in satisfaction of said default judgments; that the city still refuses to recognize said warrants, and refuses to permit any more judgments to be rendered upon the remaining grade warrants by default or otherwise.

The relator replied to the answer by setting out in full, copies of the several judgments taken in the actions on the street grade warrants, and in partial satisfaction of which the warrants in question were issued. The judgments severally show that the city was personally served, and that it made default. It is alleged that no one of the judgments has been modified, vacated, or reversed on appeal, and that each judgment remains in full force and effect.

With the issues, in effect, as above stated, the cause was submitted to the court for its decision and for judgment, without any evidence. The defendants, by their counsel in open court, admitted all the allegations contained in the amended alternative writ of mandate and in the reply to the answer. Upon the other hand, the relator by its counsel admitted all the allegations contained in the defendants' answer. The court thereupon rendered judgment that the judgments and the indebtedness fund warrants set forth in the amended alternative writ and in reply are null and void, and that no one of them is, or ever was, a valid claim or obligation against the city of Port Townsend. The action and amended alternative writ were dismissed, and the relator has appealed.

It is first assigned that the court erred in denying appellant's motion to require respondents to separately state the defenses in the answer. One paragraph of the same motion

called for striking parts of the answer. We find an order in the record expressly denying that part of the motion which calls for striking parts of the answer, but nothing appears in the record to show that the court took any action with reference to that part of the motion which called for separate statement of the defenses. The appellant both demurred and replied to the answer, and in the absence of a showing in the record that the court either ruled or was asked to rule upon that branch of the motion calling for separate statement of the defenses, we think appellant must now be deemed to have waived that part of the motion.

The other assignments of error are discussed together. They are that the court erred in overruling the appellant's demurrer to the respondent's answer, and also in rendering judgment against appellant holding the warrants void. It is argued that the superior court which rendered the judgments in the suits upon the grade warrants had jurisdiction of the parties and of the subject-matter, and had, therefore, power to render the judgments. It is conceded, however, that a court of equity has the power, under an original bill filed as a direct attack for that purpose, to impeach a judgment which has been obtained by fraud or collusion. It is also conceded that, under our code practice, equitable defenses may be pleaded in an action at law, and that the answer setting up such a defense has the same force as a bill in equity. It is however, argued that the answer in this case is a collateral, and not a direct, attack upon the judgments in the grade warrant suits, for the reason that the answer is lacking in certain necessary allegations for a bill in equity, viz., that it shows that respondents failed to use the legal remedies at their disposal, and also that they are barred by laches.

The answer shows that some of the judgments were rendered as early as May, 1898, and that in January, 1899, the city council refused to recognize the validity of the judgments and of the warrants issued in satisfaction thereof. But

since it does not appear from the answer that the city moved to vacate the judgments in the manner and within the year provided by statute, it is urged that it has failed to avail itself of its legal remedy, and that it cannot now maintain an equitable action as an attack upon the judgments. The case of *Long v. Eisenbeis*, 18 Wash. 423, 51 Pac. 1061, is cited by appellant as decisive of this point. It will be observed, however, that 'the *Long* case did not involve the right of one to maintain an original suit in equity to impeach a judgment for fraud or collusion, but simply the right to bring an original suit after the year for the purpose of correcting a judgment for mere irregularities and errors. But we deem it immaterial to pursue a discussion here as to the right to maintain original suits in equity after the expiration of the year, for the reason that the matters alleged here are set up as a defense, and not in support of an original action. Is an equitable defense to an action barred by the statute of limitations? It would seem that so long as a cause of action survives, the equitable defense thereto should survive also. This principle is well stated by the California Court of Appeals in the case of *McColgan v. Muirland*, 2 Cal. App. 6, 82 Pac. 1113.

"This brings us to the second question as to whether or not the defense is barred by subdivision 4, § 338, Code Civ. Proc., which provides that an action for relief on the ground of fraud is barred within three years. The note was given and the judgment thereon entered more than three years before the commencement of this action, and hence, if the provision of the section applies to a defense, the demurrer was properly sustained. If the defense in such case is barred in three years we would have the peculiar condition of the law that a judgment obtained by fraud and without consideration may be successfully defended for a period of three years, but for the two years thereafter no such defense could be made. We are of opinion that the statute does not apply to fraud relied upon purely as a defense where no affirmative relief is sought by the defendant. If the judgment was procured

by fraud and without consideration a court of equity will grant relief. It will grant relief by allowing the facts which will vitiate the judgment to be alleged and proven as a defense to it, and this as long as the judgment is the foundation for the suit. So long as the plaintiff is allowed to come into court, seeking to enforce such judgment, the defendant may allege and prove the fraud as a defense. The defendants' affirmative action for relief on the ground of fraud is barred, but the judgment does not become, by age alone, immune from the infirmities under which it originated. In *Hart v. Church*, 126 Cal. 479, 58 Pac. 913, 77 Am. St. Rep. 195, the court said: 'It is also true that where a party seeks relief upon the ground of fraud or mistake, the action must be commenced within three years after the discovery of the facts constituting the fraud or mistake; but a different case is presented when the party who has procured the fraudulent contract, or who seeks to take advantage of it, asks to have it declared valid or to enforce its executory terms, and is thus himself asking affirmative relief. The three-years statute of limitations does not bar the defendant in such a case from objecting to the validity or to the enforcement of the contract upon the ground of fraud. It is not incumbent upon one who has thus been defrauded to go into court and ask relief, but he may abide his time, and when enforcement is sought against him excuse himself from performance by proof of the fraud.' "

The above case seems to be squarely in point. It is actions themselves which are barred by statutes of limitation, and not matters of pure defense to such actions. Of course, a different question arises when the matters relied upon form the foundation for a counterclaim or cross-complaint. In further support of this rule see the following cases: *Robinson v. Glass*, 94 Ind. 211; *Sebree v. Patterson*, 92 Mo. 451, 5 S. W. 31; *Pinkham v. Pinkham*, 61 Neb. 336, 85 N. W. 285; *Williams v. Neely*, 67 C. C. A. 171, 134 Fed. 1.

The defense is therefore not barred by either the statute of limitations or by laches, and it remains to be determined whether the facts stated are sufficient to show the judgments to be void. The action is in the nature of seeking an execution

to enforce those judgments, inasmuch as the warrants sought to be enforced were issued in partial satisfaction of the judgments.  If the facts shown are sufficient to show that the judgments are void, then the warrants ought not to be enforced, and appellant should be denied his writ for that purpose.  We have seen that the original obligations out of which the judgments grew were street grading contracts which were to be paid by special assessments.  There was no intention either on the part of the street contractors or of the city to make the general taxpayer liable for these street improvements.  This court has repeatedly held that such obligations cannot be made a general charge against the city.  *Wilson v. Aberdeen,* 19 Wash. 89, 52 Pac. 524; *Rhode Island Mtg. etc. Co. v. Spokane,* 19 Wash. 616, 53 Pac. 1104; *Northwestern Lumber Co. v. Aberdeen,* 20 Wash. 102, 54 Pac. 935; *Northwestern Lumber Co. v. Aberdeen,* 22 Wash. 404, 60 Pac. 1115; *Potter v. Whatcom,* 25 Wash. 207, 65 Pac. 197; *State ex rel. Security Savings Society v. Moss,* 44 Wash. 91, 86 Pac. 1129; *State ex rel. Barnes v. Blaine,* 44 Wash. 218, 87 Pac. 124.

Few principles seem to be better established by the decisions of this court, if repeated decisions shall be taken as emphasizing the law upon a given subject, than that the general taxpayers of a city shall not be made liable for the class of indebtedness sought to be enforced here.  The reasons are set forth in the decisions, and need not be repeated here.  Appellant concedes the force of the decisions, but insists that it is entitled to special consideration notwithstanding the decisions, by virtue of what it argues is in the nature of a vested right.  This contention is based upon the following history:  Grade warrants issued under some of these same street improvement contracts were involved in the case of *Bank of British Columbia v. Port Townsend,* 16 Wash. 450, 47 Pac. 896.  It is argued that this court in that decision held that the city was generally liable if it failed to

provide and collect special funds for street improvements, and it is asserted that, relying upon that decision and believing in the liability of the city, the city council of Port Townsend made the agreement to permit the default judgments, and at the same time secure the advantage of reduced rates of interest. It is therefore contended that the judgments were taken while a decision of this court prevailed which declared the city's general liability, and that the judgments were therefore proper and conferred upon the street warrant holders benefits in the nature of vested rights. Whatever may be said of the soundness of appellant's argument under ordinary circumstances and where a decision has long been recognized as establishing a rule, still it is not available under the facts here. The judgments involved here were rendered in the months of May, August, September, and October, in the year 1898, the first one bearing date May 27 of that year. It is true the decision in *Bank of British Columbia v. Port Townsend, supra,* was rendered February 11, 1897, something more than a year before the first of these judgments was rendered, but on the 9th day of July, 1897, long before any one of these judgments was rendered, the decision of this court was announced in *German American Savings Bank v. Spokane,* 17 Wash. 315, 49 Pac. 542, 38 L. R. A. 259. In that opinion the court said the following:

"In *Bank of British Columbia v. Port Townsend,* 16 Wash. 450 (47 Pac. 896), while it was in effect held that an action would lie against the city where there was a failure to provide the fund, there was no discussion of that question. The case was disposed of on a demurrer to the complaint. Although the complaint alleged that the right to prosecute the assessments was lost, no importance was attached to it. In fact the mooted questions were other than that as the opinion shows, and it was held that the complaint stated a cause of action. It was also held that, unless the contract was authorized by an ordinance, there could be no recovery. The most of these decisions were by a majority of the court only. . . . But it was intimated that the city might be

liable, where its officers had been fully moved to proceed, and had failed in such instances.  In view of this and the subsequent expressions noticed in later decisions, we desire to regard the express point above mentioned as not definitely settled or passed upon here, except in so far as· sustaining the complaint in the *Port Townsend* case alluded to may have incidentally held it as the law of that case, but which case, under the circumstances given, should not have force beyond that."

It was thus specifically announced by 'this court, more·than ten months before the first of these judgments was taken, that the decision in the *Bank of British Columbia* case should not be regarded as conclusive of anything beyond merely sustaining the complaint as the law of that case.  This admonition was followed by the decision in *Wilson v. Aberdeen, supra,* which was rendered March 7, 1898, more than two and one-half months before the first of these judgments was taken, and much longer before the remaining ones were entered. That decision, based upon the argument of *German-American Savings Bank v. Spokane, supra,* squarely decided that the city did not become liable.  The same doctrine was again declared on July 20, 1898, in *Rhode Island Mortgage etc. Co. v. Spokane, supra,* which was some time before the second judgment herein involved was rendered.  In view of all that had been said by this court in the several decisions noted, it cannot be· said that the holders of these grade warrants or the members of the city council had even reasonable ground to believe, at the time the judgments were taken, that they were authorized by the *Bank of British Columbia* decision. Upon the other hand, they were directly and amply advised to the contrary, and the agreements for the default judgments were made and carried out in the very face of the decisions of this court that a city under such circumstances is not liable. The agreements therefore resulted from collusion, and became legally fraudulent upon the rights of the municipality and its taxpayers, and the judgments rendered in pursuance

thereof were therefore fraudulent and void, and may be, and are, so declared here, for the reasons hereinbefore set forth. The judgments being void, the warrants issued for the purpose of satisfying them are also void, and appellant is not entitled to a writ of mandate directing a tax levy to pay them.

The judgment is affirmed.

MOUNT, DUNBAR, CROW, and RUDKIN, JJ., concur.